UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------- X

ERIN MURPHY,

                            Plaintiff,

                v.

GLENCORE LTD.,

                        Defendant.

:
:
:
:
:  CIVIL ACTION NO. 18-cv-01027 (CSH)
:
:
:
:
:  AUGUST 23, 2018
:
:
:
:

---------------------------------------------------------- X

**DEFENDANT GLENCORE LTD.'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION TO COMPEL ARBITRATION
AND DISMISS OR, IN THE ALTERNATIVE, STAY THE PROCEEDINGS**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

    I.    Title VII Claims Are Arbitrable................................................................................2

    II.    An Arbitration Agreement Contained in an Employment Application is
          Enforceable .............................................................................................................3

    III.    An Alleged Failure to Read an Agreement Before Signing  Does Not
          Render the Agreement Unconscionable.....................................................................5

    IV.    A Unilateral Obligation to Arbitrate Is Enforceable Where, As Here,  The
          Agreement Is Supported by Adequate Consideration.................................................7

    V.    Connecticut Law Does Not Require an Explicit Jury Waiver ................................8

CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Circuit City Stores v. Adams,*
    532 U.S. 105 (2001) ............................................................................................. 2, 4

*D'Antuono v. Serv. Rd. Corp.,*
    789 F. Supp. 2d 308 (D. Conn. 2011) ....................................................................... 5

*Delk v. GO VERTICAL, INC.,*
    303 F. Supp. 2d 94 (D. Conn. 2004) ................................................................... 6, 10

*Doctor's Assocs. v. Alemayehu,*
    No. 3:18-CV-276 (JCH), 2018 U.S. Dist. LEXIS 98225 (D. Conn. June 12, 2018) ................. 8

*EEOC v. Waffle House,*
    534 U.S. 279 (2002) ................................................................................................. 4

*Epic Sys. Corp. v. Lewis,*
    584 U.S. __, 200 L. Ed. 2d 889(2018) .................................................................... 5

*Fahim v. CIGNA Invs., Inc.,*
    No. 3:98CV232 (PCD) RMH, 1998 U.S. Dist. LEXIS 22517 (D. Conn. Sept. 5, 1998) ........... 7

*Gilmer v. Interstate/Johnson Lane Corp.,*
    500 U.S. 20 (1991) ............................................................................................. 2, 5

*Gold v. Deutsche Aktiengesellschaft,*
    365 F.3d 144 (2d Cir. 2004) ................................................................................. 2, 6

*Harden v. Maybelline Sales Corp.,*
    282 Cal. Rptr. 96 (Cal. Ct. App. 1991) .................................................................... 4

*Harrington v. Atl. Sounding Co.,*
    602 F.3d 113 (2d Cir. 2010) ................................................................................... 8

*Hessler v. Smith Barney,*
    No. CV 980583104S, 1999 Conn. Super. LEXIS 2345 (Conn. Super. Ct. Aug. 20, 1999) ....... 9

*Laterra v. Ge Betz, Inc.,*
    No. 3:17-cv-00057-VAB, 2017 U.S. Dist. LEXIS 128599 (D. Conn. Aug. 14, 2017) ............. 6

*Myers v. Bunker Ramo Corp.,*
    No. B-90-506 (JAC), 1992 U.S. Dist. LEXIS 5336, (D. Conn. Jan. 21, 1992),
    *aff'd,* 979 F.2d 846 (2d Cir. 1992) ........................................................................ 3

*Norton v. Commercial Credit Corp.*,
    No. CV 980578441S, 1998 Conn. Super. LEXIS 2833 (Conn. Super. Ct. Oct. 6, 1998) .... 9, 10

*Palmer v. Convergys Corp.*,
    No. 7:10-cv-145 (HL), 2012 U.S. Dist. LEXIS 16200 (M.D. Ga. Feb. 9, 2012) .................. 3, 4

*Parisi v. Goldman, Sachs & Co.*,
    710 F.3d 483 (2d Cir. 2013) ....................................................................................................... 2

*Perry v. Thomas*,
    482 U.S. 483 (1987) .................................................................................................................... 8

*Pingel v. Gen. Elec. Corp.*,
    No. 3:14-CV-00632 (CSH), 2014 U.S. Dist. LEXIS 175526 (D. Conn. Dec. 19, 2014) .......... 6

*Price v. Plant Stand*,
    No. G038361, 2008 Cal. App. Unpub. LEXIS 1145 (Cal. Ct. App. Feb. 8, 2008) .................... 8

*Ragone v. Atl. Video*,
    595 F.3d 115 (2d Cir. 2010) ....................................................................................................... 2

*Santos v. GE Capital*,
    397 F. Supp. 2d 350 (D. Conn. 2005) ........................................................................................ 4

*Serafin v. Connecticut*,
    No. 3:98CV398 (CFD), 2005 U.S. Dist. LEXIS 3603 (D. Conn. Mar. 9, 2005) ........................ 4

*Sobhani v. Northrop Grumman*,
    No. 3:10-cv-1994 (CFD), 2011 U.S. Dist. LEXIS 91402 (D. Conn. Aug. 16, 2011) ................ 4

**Rules**

Cal. R. Ct. 8.1115(a) ......................................................................................................................... 8

**Other Authorities**

American Arbitration Association, "Standard Arbitration Clause – Employment,"
    https://www.adr.org/Clauses (last visited August 21, 2018) ...................................................... 9

Jill Saluck, *Hidden Arbitration Clauses: What You Don't Know CAN Hurt You*, Conn. Emp't L.
    Blog, https://capclaw.com/hidden-arbitration-clauses-what-you-dont-know-can-hurt-you/
    (last visited August 21, 2018) ............................................................................................... 2, 3

Mark Carey, *A Few Very Good Reasons Why You Can't Trust Your Employer*, Conn. Emp't L.
    Blog, https://capclaw.com/we-have-grown-accustomed-to-dysfunctional-at-will-relationships-
    with-employers-and-have-allowed-them-to-manipulate-with-unenforced-corporate-codes-of-
    conduct-lofty-corporate-double-speak-and-fear/ (last visited August 21, 2018) ........................ 2

**INTRODUCTION**

Ms. Murphy signed a clear and unambiguous agreement to arbitrate the claims she now asserts against Glencore.[1]  Ms. Murphy is bound by her agreement and arbitration should be compelled.  Each of Plaintiff's arguments is contrary to the strong policy favoring arbitration and has been expressly rejected by the Supreme Court, the Second Circuit, and Connecticut state courts.

*First*, the Supreme Court and the Second Circuit have explicitly and repeatedly held that Title VII claims are arbitrable, as Plaintiff's counsel has admitted in its published promotional material.

*Second*, the Supreme Court has acknowledged the enforceability of arbitration agreements in employment applications, as this Court has recognized on a number of occasions.

*Third*, Ms. Murphy's dubious assertion that she neglected to read the italicized arbitration agreement directly above her signature line in a two-page document that she voluntarily signed while pursuing a six-figure operations position fails as a matter of law.  Ms. Murphy had an MBA, had worked for nearly 12 years, including at Goldman Sachs and Morgan Stanley, and was pursuing an operations job that would require her to demonstrate attention to contractual details.

*Fourth*, Ms. Murphy's agreement to arbitrate is supported by adequate consideration in the form of Glencore's explicit agreement to consider her employment application.

*Fifth*, Plaintiff's claim that her agreement to arbitrate should not be enforced because she did not explicitly waive her right to a jury trial is borderline frivolous and a waste of time and resources.  Courts routinely enforce arbitration agreements that do not contain express jury

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in Glencore's Memorandum of Law in Support of Its Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay the Proceedings, filed on June 21, 2018 [D.E. 13-1] ("Glencore's Motion").

waivers because they contain express agreements to arbitrate.

For these reasons, and the reasons set forth in Glencore's Motion, the Motion to Compel Arbitration should be granted and Plaintiff's Complaint should be dismissed.

## **ARGUMENT**

### I.    **Title VII Claims Are Arbitrable**

Both the Supreme Court and the Second Circuit have expressly held that Title VII claims are arbitrable. *See, e.g., Circuit City Stores v. Adams*, 532 U.S. 105, 123 (2001); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (claims under the Age Discrimination in Employment Act are arbitrable); *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 487 (2d Cir. 2013)[2]; *Ragone v. Atl. Video*, 595 F.3d 115, 120 (2d Cir. 2010); *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 147 (2d Cir. 2004); Glencore's Motion at 11-12.

Since the legal authorities are conclusively in favor of arbitration, Ms. Murphy begins her brief by contending what she says the law *ought to be* instead of addressing what the law *is*. Plaintiff's Memorandum in Opposition to Motion to Compel Arbitration [D.E. 26] ("Pl.'s Opp'n") at 1-3. Ms. Murphy opines that agreements to arbitrate Title VII claims violate public policy, citing only dissenting opinions. *See id.* at 2-3.[3]

---

[2] In her Declaration, Ms. Murphy asserts that "[p]rior to [her] employment with Glencore, [she] was not familiar with what an arbitration agreement was as [she] had never entered into one regarding [her] employment." Declaration of Erin Murphy dated July 26, 2018 [D.E. 26] ("Murphy Decl."), ¶ 12. While this assertion is irrelevant to the enforceability of the arbitration agreement at issue in this case, it is highly doubtful that, as an employee of both Goldman Sachs and Morgan Stanley, Ms. Murphy did not enter into an arbitration agreement. Indeed, the *Parisi* case involved an arbitration agreement between Goldman Sachs and its employee to arbitrate Title VII claims. *See Parisi*, 710 F.3d at 485 (describing arbitration agreement). And, in promotional material on its website, Plaintiff's counsel has identified Morgan Stanley as a company that "use[s] forced arbitration clauses." Jill Saluck, *Hidden Arbitration Clauses: What You Don't Know CAN Hurt You*, Conn. Emp't L. Blog, https://capclaw.com/hidden-arbitration-clauses-what-you-dont-know-can-hurt-you/ (last visited August 21, 2018) ("Saluck Post").

[3] In multiple posts on its website, Plaintiff's counsel has admitted that arbitration agreements like the one contained in Ms. Murphy's employment application are enforceable. *See* Mark Carey, *A Few Very Good Reasons Why You Can't Trust Your Employer*, Conn. Emp't L. Blog, https://capclaw.com/we-have-grown-accustomed-to-dysfunctional-at-will-relationships-with-employers-and-have-allowed-them-to-manipulate-with-unenforced-corporate-codes-of-conduct-lofty-corporate-double-speak-and-fear/ (last visited August 21, 2018) (providing a link

In the face of binding Supreme Court and Second Circuit precedent acknowledged by Ms. Murphy's counsel, there is no question that Ms. Murphy's Title VII claims are arbitrable.

## II.     An Arbitration Agreement Contained in an Employment Application is Enforceable

Again undeterred by binding authority to the contrary, Ms. Murphy asserts that "employment applications do not result in contracts" and, therefore, because Ms. Murphy's agreement to arbitrate is contained in her employment application, it is unenforceable even though it is explicit and supported by consideration. Pl.'s Opp'n at 6. Ms. Murphy can point to no authority supporting her argument.

In the only Connecticut case cited by Ms. Murphy on this point, this Court found that a vague, oral promise of "long and rewarding future employment and career advancement" was superseded by an express written agreement for at-will employment contained *in an employment application* signed by the employee. *Myers v. Bunker Ramo Corp.*, No. B-90-506 (JAC), 1992 U.S. Dist. LEXIS 5336, at *23-*25 (D. Conn. Jan. 21, 1992), *aff'd*, 979 F.2d 846 (2d Cir. 1992) (cited in Pl.'s Opp'n at 7). This case did not concern an agreement to arbitrate, but it nonetheless undermines Ms. Murphy's contention that an employment application cannot result in a binding agreement.

Ms. Murphy's citation to *Palmer v. Convergys Corp.*, No. 7:10-cv-145 (HL), 2012 U.S. Dist. LEXIS 16200 (M.D. Ga. Feb. 9, 2012), a case from the Middle District of Georgia, further contradicts her position. Pl.'s Opp'n at 7.[4] Beyond the fact that this case has no bearing on

---

to the Supreme Court's 2018 *Epic Systems* decision and stating: "The U.S. Supreme Court's further endorsement of employer arbitration agreements cemented in stone the future of employee litigation and the permanent role of arbitration in your career"); Saluck Post (linking to the *Epic Systems* decision and explaining that it "will have significant consequences for the ability of employees to fight back against discrimination on the job" and also noting that "[b]y signing mandatory arbitration contracts, employees are waiving their fundamental, constitutional right to a trial by a jury").

[4] The text cited by Ms. Murphy appears to come from this case. However, Ms. Murphy provides no case citation other than an "*id.*" that is clearly misplaced. Pl.'s Opp'n at 7.

3

Connecticut law, the court actually found that an employment application *can* contain a binding contract. *Palmer*, 2012 U.S. Dist. LEXIS 16200, at *9. The language quoted by Ms. Murphy is simply the court's summation of the plaintiff's argument, and is closely followed by the court's holding that it "*disagrees* with Plaintiffs." *Id.* (emphasis added).

Plaintiff also relies on a California case, *Harden v. Maybelline Sales Corp.*, 282 Cal. Rptr. 96 (Cal. Ct. App. 1991), for the proposition that "an application for employment is not a contract; it is a mere solicitation of an offer of employment." Pl.'s Opp'n at 6-7. California law is not persuasive in Connecticut, and therefore this case should be given no weight. In any event, unlike in the instant case, the parties in *Harden* agreed that the employment application was not a binding employment agreement. 282 Cal. Rptr. at 99. However, that conclusion says nothing about the binding nature of an arbitration agreement in an employment application that is supported by consideration and provides arbitral coverage for potential claims starting with the application itself. Here, where Ms. Murphy's clear agreement to arbitrate is supported by explicit consideration that Glencore would review her application, *Harden* is inapposite.

Ms. Murphy otherwise ignores relevant and persuasive authority upholding arbitration clauses contained in employment applications. *See Circuit City*, 532 U.S. at 109; *see also EEOC v. Waffle House*, 534 U.S. 279, 282-83 (2002). In fact, this Court has described *Circuit City* several times as "holding that respondent's employment application, which included [a] clause mandating binding arbitration of all federal statutory claims, constituted an enforceable agreement under the Federal Arbitration Act." *Sobhani v. Northrop Grumman*, No. 3:10-cv-1994 (CFD), 2011 U.S. Dist. LEXIS 91402, at *12 (D. Conn. Aug. 16, 2011); *see also Santos v. GE Capital*, 397 F. Supp. 2d 350, 354 (D. Conn. 2005); *Serafin v. Connecticut*, No. 3:98CV398 (CFD), 2005 U.S. Dist. LEXIS 3603, at *24 (D. Conn. Mar. 9, 2005). That Plaintiff agreed to

arbitrate her claims against Glencore in an employment application does not change the fact that the agreement to arbitrate is fully enforceable.

**III.     An Alleged Failure to Read an Agreement Before Signing
           Does Not Render the Agreement Unconscionable**

Faced with the fact that she signed a two-page employment application containing an unambiguous and italicized arbitration agreement, Ms. Murphy argues that the agreement is unconscionable because she was "given no meaningful notice or ability to review its terms." Pl.'s Opp'n at 12.  At its core, Plaintiff's argument boils down to:  I did not read the agreement, so I should not be bound by it.  This argument is firmly foreclosed by binding case law.

As an initial matter, Ms. Murphy's appeal to the claimed unequal bargaining power between her and Glencore has no merit.  As the Supreme Court has stated, "[m]ere inequality in bargaining power" is not a basis for declining to enforce arbitration agreements contained in employment contracts.  *Gilmer*, 500 U.S. at 33; *see also* Glencore's Motion at 7-8 (collecting cases holding that "take it or leave it" employment contracts are not procedurally unconscionable); *Epic Sys. Corp. v. Lewis*, 584 U.S. __, 200 L. Ed. 2d 889, 911 (2018) (employment agreement requiring individualized arbitration "must be enforced as written").

With Connecticut law squarely in favor of arbitration, Ms. Murphy inexplicably cites California cases on procedural unconscionability.  Pl.'s Opp'n at 11-12.  But this Court has previously criticized litigants for relying on California law to support anti-arbitration arguments: "While California courts have tended to look upon arbitration agreements with disfavor, . . . in Connecticut, arbitration is a favored procedure . . . ." *D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 329-30 (D. Conn. 2011) (internal quotation marks and citations omitted).  This Court specifically rejected the *Armendariz* case – relied on heavily by Plaintiff – as irrelevant to arbitration agreements under Connecticut law.  *Id.*

The only Connecticut case cited by Ms. Murphy on this issue is *Laterra v. Ge Betz, Inc.*, which dealt with facts bearing no resemblance to ours. No. 3:17-cv-00057-VAB, 2017 U.S. Dist. LEXIS 128599 (D. Conn. Aug. 14, 2017). There, the employer claimed the employee had completed an online training program informing him of new internal arbitration procedures, but the employer did not provide the Court with the documents or precise language reviewed by the employee, or with any document bearing the employee's signature or written acknowledgement of his online training or the new arbitration procedures. *Id.* at *7-*8. In denying the employer's motion to compel arbitration, the Court distinguished *Laterra* from *Pingel v. General Electric Co.*, in which this Court enforced an arbitration agreement because the plaintiff had physically signed a form acknowledging that she had reviewed the company's internal arbitration procedures, and therefore the "records contained clear indications of the employee['s] assent" to arbitration. *Id.* at *21-*22 (citing *Pingel*, No. 3:14-CV-00632 (CSH), 2014 U.S. Dist. LEXIS 175526 (D. Conn. Dec. 19, 2014) (Haight, J.)).

As Ms. Murphy signed a physical employment application containing the arbitration agreement, her case is similar to *Pingel* and different from *Laterra*. Further, Plaintiff cannot seriously argue that she was "given no meaningful notice" of the arbitration agreement directly above her printed signature. Pl.'s Opp'n at 12. As a matter of law, Ms. Murphy is deemed to have assented to the terms in the contract she signed. *See, e.g.*, *Delk v. GO VERTICAL, INC.*, 303 F. Supp. 2d 94, 99 (D. Conn. 2004); *see also Gold*, 365 F.3d at 150 ("[W]e cannot accept a rule that would allow a party to avoid his legal obligation to read a document carefully before signing it just because the document is an arbitration agreement under which Title VII claims could be arbitrated."); Glencore's Motion at 8-9 (citing cases granting employers' motions to

compel arbitration over arguments that employee did not read or review agreement before signing).

## IV.   A Unilateral Obligation to Arbitrate Is Enforceable Where, As Here, The Agreement Is Supported by Adequate Consideration

In an effort to further distance herself from her clear agreement to arbitrate, Ms. Murphy points to the fact that the arbitration agreement "requires only Ms. Murphy, not Glencore, to submit to binding arbitration" and is therefore unenforceable.  Pl.'s Opp'n at 7-8.  This argument carries no weight because Ms. Murphy's agreement is expressly supported by adequate consideration.

Under Connecticut law, a unilateral obligation to arbitrate is enforceable if supported by adequate consideration.  In *Fahim v. CIGNA Investments, Inc.*, this Court rejected the plaintiff's argument that the arbitration agreement was invalid because the employer "did not commit to arbitrate claims it may have against the employee."  No. 3:98CV232 (PCD) RMH, 1998 U.S. Dist. LEXIS 22517, at *9 (D. Conn. Sept. 10, 1998).  The Court concluded that "[m]utuality of the arbitration agreement is *irrelevant*" so long as the employer gives some form of adequate consideration in exchange for the employee's promise to arbitrate.  *Id.* (emphasis added).

Ms. Murphy received adequate consideration from Glencore in exchange for her agreement to arbitrate: Glencore promised to consider her application for employment.  Indeed, Ms. Murphy expressly acknowledged as much in the Employment Application, which provides: "*In consideration for Glencore's considering my application for employment*, I expressly agree that any dispute between Glencore and me . . . will be submitted to final and mutually binding arbitration . . . ."  Polzer Aff. Ex. A (emphasis added).

Ms. Murphy does not even attempt to distinguish *Fahim* on this point, and instead cites only to an unpublished California state court decision.  Pl.'s Opp'n at 7 (citing *Price v. Plant*

7

*Stand*, No. G038361, 2008 Cal. App. Unpub. LEXIS 1145 (Cal. Ct. App. Feb. 8, 2008)).

Unpublished California cases are not persuasive authorities in California, much less in

Connecticut. *See* Cal. R. Ct. 8.1115 ("[A]n opinion of a California Court of Appeal or superior

court appellate division that is not certified for publication or ordered published must not be cited

or relied on by a court or a party in any other action."). Moreover, the *Price* case relies on

*Armendariz* for the proposition that an arbitration agreement in the employment context must be

bilateral. 2008 Cal. App. Unpub. LEXIS 1145, at *8. This Court has expressly rejected

*Armendariz*. *See supra* at III. *Price* has no relevance here.

Plaintiff cites just one Connecticut case on this issue. *See* Pl.'s Opp'n at 12-14 (quoting

*Doctor's Assocs. v. Alemayehu*, No. 3:18-CV-276 (JCH), 2018 U.S. Dist. LEXIS 98225

(D. Conn. June 12, 2018)). But in *Alemayehu*, the franchisee application "contain[ed] no

promises . . . that [the franchisor] will review the applications it receives." 2018 U.S. Dist.

LEXIS 98225, at *8. The opposite is true here: Ms. Murphy's arbitration agreement begins with

the explicit "consideration" that Glencore will "consider[ her] application for employment."

Polzer Aff. Ex. A. In fact, in *Alemayehu*, this Court assumed that an express promise to consider

an application *is* sufficient consideration for an agreement to arbitrate. *Id.* at *10. It is clear that

Ms. Murphy is bound by her agreement to arbitrate.

## V.      Connecticut Law Does Not Require an Explicit Jury Waiver

Connecticut courts have repeatedly held that an enforceable arbitration agreement does

not require a separate jury waiver. Glencore's Motion at 9-10 (collecting cases). Federal courts

routinely enforce arbitration agreements lacking express jury waivers. *Id.* (collecting cases); *see

also Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 126 (2d Cir. 2010) (quoting *Perry v.

Thomas*, 482 U.S. 483, 492 n.9 (1987)) ("[C]ourts may not 'rely on the uniqueness of an

agreement to arbitrate,' which necessarily waives jury trial, 'as a basis for a state-law holding

8

that enforcement would be unconscionable.'"). Consistent with these precedents, the sample

employment arbitration clause provided by the American Arbitration Association contains no

express jury waiver:

> Any controversy or claim arising out of or relating to this [employment application; employment ADR program; employment contract] shall be settled by arbitration administered by the American Arbitration Association under its Employment Arbitration Rules and Mediation Procedures and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

American Arbitration Association, "Standard Arbitration Clause – Employment,"

https://www.adr.org/Clauses (last visited August 21, 2018) (brackets in original).

Ms. Murphy cites only one case in which a Connecticut court found that an employment

arbitration agreement lacking an explicit jury waiver was invalid, and that case must be limited

to its facts. In *Norton v. Commercial Credit Corp.*, the Superior Court of Connecticut

emphasized that the plaintiff claimed her employer fraudulently induced her into agreeing to

arbitrate by telling the employee "she wasn't agreeing to anything but merely acknowledging

receipt of the documents." No. CV 980578441S, 1998 Conn. Super. LEXIS 2833, at *4 (Conn.

Super. Ct. Oct. 6, 1998). *Norton* has never been followed. Rather, in a subsequent case without

any allegation of fraudulent inducement, the same court distinguished *Norton* as an extreme case

and held unequivocally: "The court does not credit the contention that an arbitration agreement

requires a written provision or notice that jury trial is waived." *Hessler v. Smith Barney*, No. CV

980583104S, 1999 Conn. Super. LEXIS 2345, at *10 (Conn. Super. Ct. Aug. 20, 1999).

Faced with case law undeniably holding that an agreement to arbitrate will be enforced

even in the absence of an express jury waiver, Ms. Murphy asserts in conclusory fashion that

Glencore "fraudulently misle[d]" her into thinking the employment application "was only an

application for employment and nothing more." Pl.'s Opp'n at 9; Murphy Decl. ¶ 4.

9

Ms. Murphy does not support this self-serving conclusion with statements of any kind.

Ms. Murphy cannot bring herself within the facts of *Norton*, where the employee was told

explicitly that "she wasn't agreeing to anything."  1998 Conn. Super. LEXIS 2833, at *4.

Ms. Murphy's claim that she did not read or understand the italicized text containing the

arbitration agreement fails as a matter of law.  *See, e.g.*, *Delk*, 303 F. Supp. 2d at 99 (internal

quotation marks and citations omitted) ("[W]here a person of mature years who can read and

write signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to

read it and notice of its contents will be imputed to him if he negligently fails to do so.").  In the

absence of affirmative misrepresentations that reasonably caused Ms. Murphy to disregard the

plainly worded arbitration agreement – and Ms. Murphy offers none – Plaintiff is bound by her

signed agreement to arbitrate.

## **CONCLUSION**

For the foregoing reasons, and the reasons set forth in Glencore's Motion, the Motion to

Compel Arbitration should be granted and Plaintiff's Complaint should be dismissed.


*[remainder of page intentionally left blank]*

Dated: Stamford, Connecticut
       August 23, 2018

          Respectfully submitted,

          DEFENDANT GLENCORE LTD.

          By:*/s/ Marc L. Zaken*
          Marc L. Zaken (CT03110)
          marc.zaken@ogleetree.com
          OGLETREE, DEAKINS, NASH, SMOAK
          & STEWART, P.C.
          281 Tresser Boulevard, Suite 602
          Stamford, CT  06901
          Phone: 203.969.3100
          Fax: 203.969.3150

          Of counsel:

          CURTIS, MALLET-PREVOST,
          COLT & MOSLE LLP
          Eliot Lauer (admitted *pro hac vice*)
          Julia B. Mosse (admitted *pro hac vice*)
          101 Park Avenue
          New York, NY 10178
          Phone:  212.696.6000
          elauer@curtis.com
          jmosse@curtis.com

          Its Attorneys

## CERTIFICATION

I hereby certify that on August 23, 2018 a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Marc L. Zaken___
Marc L. Zaken

32687260