UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ERIN MURPHY<br><br>           Plaintiff,<br>v.<br><br>GLENCORE LTD.,<br><br>           Defendant. | Civil Action No. 3:18-cv-01027 (CSH)<br><br>February 11, 2018 |

## RULING ON DEFENDANT'S MOTION TO COMPEL ARBITRATION

Plaintiff Erin Murphy ("Plaintiff" or "Murphy") brought this action against her employer Glencore Ltd. ("Glencore" or "Defendant") alleging discrimination based on gender and pregnancy, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) ("Title VII"), the Connecticut Fair Employment Practices Act, § 46a-60(7)(a) ("CFEPA"), and the Pregnancy Discrimination Act, 42 U.S.C § 2000e (k) ("PDA"). [*See* Doc. 1 ("Compl.").] Plaintiff also requested declaratory judgment on the matter of mandatory arbitration. [*Id.*] Defendant moves pursuant to the Federal Arbitration Act, 9 U.S.C § 1, *et seq*. (the "FAA"), to dismiss or stay these proceedings and compel arbitration of Plaintiff's claims, arguing that Plaintiff agreed in writing as a condition of her employment to submit any such claims to arbitration. For the reasons stated below, Defendant's *Motion to Compel Arbitration* [Doc. 13] is granted, and the proceedings will be stayed pending resolution of the parties' arbitration.

## I. Background

The following facts, derived from Plaintiff's Complaint and the parties' briefing on the instant motion, are accepted as true for the purposes of this Ruling. The facts stated here are confined to those relevant to the present motion.

Plaintiff Erin Murphy has a master's degree in Business Administration, Finance, and Marketing from the University of Connecticut. [Compl. ¶ 13.] Prior to working at Glencore, Ms. Murphy worked for Morgan Stanley from 2004 to 2006, Sempra Energy Solutions from 2006 to 2009, and Goldman Sachs from 2009 to 2012. [Doc. 13-3 ("Polzer Aff.") Ex. A.]

On or about July 13, 2012, Murphy applied for a position at Glencore. [Compl. ¶ 200.] In connection with her application, Murphy completed a two-page employment application form (the "Employment Application"). [*Id.* ¶ 201.] The Employment Application contained the following provision in italics above Plaintiff's signature line:

> "In consideration for Glencore's considering my application for employment, I expressly agree that any dispute between Glencore and me, including, without limitation, my application for employment or my employment, if I am hired, will be submitted to final and mutually binding arbitration before the American Arbitration Association ("AAA'') as the sole and exclusive forum, and shall not be brought in any state or federal court for ultimate resolution. Nothing herein shall prohibit me from exercising my statutory right to pursue an administrative charge or complaint, but any subsequent litigation concerning such a charge or complaint shall be subject to this arbitration agreement. Information regarding the American Arbitration Association and its procedures for handling employment disputes may be found at www.adr.org"

[*Id.*]

Murphy completed, signed, and submitted the Employment Application to Glencore, but does not recall reading the above provision or ever discussing it with any representative of Defendant prior to signing. [*Id.* ¶¶ 202-204.] Murphy also contends that she completed the Employment Application in about fifteen minutes, while waiting for her scheduled job interview.

2

[Doc. 26 ("Opp. Memo.") at 4.] Murphy began working as an Operator for the Crude Oil Desk at Glencore on or about August 15, 2012, and continues to work there to date. [Polzer Aff. ¶¶ 3-4.]

On May 17, 2018, four months after Murphy filed a dual charge of discrimination against Glencore with the United States Equal Employment Opportunity Commission (the "EEOC") and the Connecticut Commission on Human Rights and Opportunities (the "CHRO"), counsel for Glencore wrote to counsel for Murphy citing the arbitration provision in the Employment Application and advising that "should Murphy decide to pursue her CHRO and/or EEOC claims, such claims must be brought before the AAA and Glencore does not waive its right to arbitrate" (the "May 17 Letter"). [Opp. Memo, Ex. A at 2.] Murphy contends that she first became aware of the mandatory arbitration provision upon receipt of the May 17 Letter. [Opp. Memo. at 4.] On June 18, 2018, Murphy filed the instant lawsuit, asserting claims of discrimination based on gender and pregnancy, hostile work environment, and retaliation under Title VII, the PDA, and the CFEPA. [*See* Compl. ¶ 1.] On June 21, 2018, Glencore filed the present motion to compel arbitration, alleging that all of Plaintiff's claims are properly subject to arbitration based on her assent to the Employment Application. [*See* Doc. 13.] Plaintiff opposes Glencore's motion.

**III.     Discussion**

     **A.  Legal Standard**

The Federal Arbitration Act ("FAA") codifies a federal policy strongly favoring arbitration as an alternative to litigation. *See, e.g.*, *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (the FAA "embod[ies] national policy favoring arbitration" (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011))); *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (the FAA represents "a strong federal policy favoring

arbitration as an alternative means of dispute resolution"); *Morales v. Rent-A-Center, Inc.*, 306 F. Supp. 2d 175, 179 (D. Conn. 2003) ("[A]ny analysis of a party's challenge to the enforcement of an arbitration agreement must begin by recognizing the FAA's strong policy in favor of rigorously enforcing arbitration agreements."). Consistent with this underlying policy, the FAA "leaves no place for the exercise of discretion by a district court," *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985), instead ***requiring*** that a contractual provision to arbitrate disputes arising out of the contract "***shall** be* valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added); *see also Genesco, Inc. v. T. Kakiuchi & Co.*, Ltd., 815 F.2d 840, 844 (2d Cir. 1987) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts <u>shall</u> direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."). Notwithstanding this strong presumption in favor of arbitrability, however, "ordinary principles of contract law apply" to evaluation of an arbitration agreement, *Ross v. Am. Express Co.*, 478 F.3d 96, 99 (2d Cir. 2007), and courts may invalidate arbitration agreements based on "generally applicable contract defenses, such as fraud, duress, or unconscionability," *Doctor's Assocs., Inc. v. Hamilton*, 150 F.3d 157, 163 (2d Cir. 1998) (citation omitted).

To determine whether to compel arbitration, the Court must consider (1) whether the parties entered into a contractually valid arbitration agreement, and (2) whether the dispute falls within the scope of the arbitration agreement. *Nicosia*, 834 F.3d at 229. The issue of validity is governed by state law principles of contract formation. *Id.* Additionally, with respect to federal statutory claims, the Court must consider "whether Congress intended those claims to be nonarbitrable." *JLM*, 387 F.3d at 169 (citing *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72,

75-76 (2d Cir. 1998)). The court applies a standard comparable to the standard for summary judgment:[1] if there is no genuine issue of material fact concerning the formation or scope of the agreement, the court must decide as a matter of law to compel arbitration. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *see also Considine v. Brookdale Senior Living, Inc.*, 124 F. Supp. 3d 83, 88 (D. Conn. 2015).

### B. Validity of the Arbitration Provision

Plaintiff concedes that her claims are within the scope of the arbitration provision at issue. [Opp. Memo. at 5.] The present dispute is therefore limited to two issues: whether the parties entered into a valid agreement to arbitrate and whether Congress intended Title VII claims to be arbitrable. Resolution of these issues in the instant case dictates that Murphy's claims must be submitted to arbitration and this litigation stayed.

Murphy does not contest that she voluntarily signed an Employment Application which stated that she would submit any dispute between herself and Glencore "to final and mutually binding arbitration" in lieu of pursuing her claims in state or federal court. [Compl. ¶ 201; Opp. Memo. at 5.] This establishes a presumption of arbitrablity. *See Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 200 n. 2 (2d Cir. 1998) (noting that party's signature on arbitration agreement established a "presumption of arbitrability"), *cert. denied*, 526 U.S. 1034 (1999). Nor does she dispute that the arbitration provision covers the claims at issue in this case. [*See* Opp. Memo. at 3, 5.] Instead, the gravamen of Plaintiff's argument is that the arbitration provision is

---

[1] Specifically, "[t]he party seeking an order compelling arbitration must substantiate" its entitlement to arbitration "by a showing of evidentiary facts that support its claim that the other party agreed to arbitration." *D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 319 (D. Conn. 2011) (citing *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)). If the party seeking to compel arbitration makes such a showing, the party opposing arbitration may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried" as to the making of the arbitration agreement." *D'Antuono*, 789 F. Supp. 2d at 319-20 (citation and internal quotation marks omitted).

unenforceable because it is "both substantively and procedurally unconscionable," and because she was fraudulently misled into entering into it. [2] [Opp. Memo. at 1.] "Substantive unconscionability focuses on the 'content of the contract,' as distinguished from procedural unconscionability, which focuses on the 'process by which the allegedly offensive terms found their way into the agreement.'" *D'Antuono*, 789 F. Supp. 2d at 327 (quoting *Cheshire Mortgage Serv., Inc. v. Montes*, 223 Conn. 80 n. 14 (1992)).

A trial court looks to state law principles of contract formation to determine whether a valid agreement to arbitrate exists. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (citing *Nicosia*, 834 F.3d at 229). In Connecticut,[3] "the doctrine of unconscionability, as a defense to contract enforcement, generally requires a showing that the contract was ***both*** procedurally and substantively unconscionable when made—i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party . . . ." *Bender v. Bender*, 975 A.2d 636, 658 (Conn. 2009) (emphasis added) (internal quotation marks and citation omitted). Here, Plaintiff can demonstrate neither. Nor can any of Plaintiff's arguments taken individually provide an independent basis to invalidate the arbitration provision.

1. Contractual Validity of an Employment Application

Murphy first argues that an application for employment does not constitute a valid and binding contract in Connecticut. [Opp. Memo. at 6-7.] The Court finds this argument unpersuasive. While the employment application, taken as a whole, lacks the specificity to set

---

[2] Plaintiff also briefly mentions—without further elaboration—that the arbitration provision should be invalidated due to duress. [*See* Opp. Memo. at 5.] Plaintiff does not dispute that she filled out the employment application freely and voluntarily, and offers no argument or evidence in support of this claim. The Court therefore finds that it is wholly without merit.
[3] The parties agree that Connecticut law applies to the Employment Application.

forth comprehensive terms of Murphy's future employment at Glencore (*e.g.*, as Plaintiff states, a job description, hourly wage, or other terms), that does not alter the fact that the agreement to arbitrate at issue unambiguously established a contractual relationship between the parties. Indeed, courts throughout the country—including the Supreme Court—have routinely ordered employment discrimination claims to be arbitrated notwithstanding the fact that they were entered into as part of an employment application. *See, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 110 (2001) (holding that respondent's employment application, which included clause mandating binding arbitration of all federal statutory claims, constituted an enforceable agreement under the Federal Arbitration Act); *Guyden v. Aetna, Inc.*, No. 3:05-CV-1652 WWE, 2006 WL 2772695, at *1 (D. Conn. Sept. 25, 2006), *aff'd*, 544 F.3d 376 (2d Cir. 2008) (granting motion to compel arbitration where arbitration clause was contained in the company's employment application).

The cases cited by Plaintiff do not alter this conclusion. In *Myers v. Bunker Ramo Corp.*, the court found that a vague, oral promise of "long and rewarding future employment and career advancement" was superseded by an express written ***employment application*** signed by the employee. No. B-90-506 (JAC), 1992 WL 88166, at *23-*25 (D. Conn. Jan. 21, 1992), *aff'd* 979 F.2d 846 (2d Cir. 1992). *Myers* thus undermines Murphy's argument that an employment application cannot result in a binding agreement. The other cases cited by Plaintiff are an unpublished case from Georgia and a 1991 case from California. These have no bearing on Connecticut law—particularly in light of pervasive authority to the contrary—and, in any event, fail to support the proposition that an employment application cannot contain a binding contract.[4]

---

[4] Specifically, in *Palmer v. Convergys Corp.*, the court **rejected** Plaintiff's argument that an employment application could not contain a binding contract. No. 7:10-cv-145 (HL), 2012 WL 425256, at *3 (M.D. Ga. Feb. 9, 2012). The language quoted by Murphy is the court's summary of plaintiff's argument, which is closely followed by the court's holding that it "disagrees with Plaintiffs." *Id.* In *Harden v. Maybelline Sales Corp.*, the other case that Plaintiff

7

2. Mutuality of Obligation to Arbitrate

Murphy next argues that the arbitration provision is unenforceable because it imposes a unilateral obligation on Murphy to arbitrate without imposing the same obligation on Glencore. [Opp. Memo. at 7-8.] This is closely related to Murphy's procedural argument that the Employment Application lacked mutual consideration.

As an initial matter, the Court disagrees with the factual basis of Plaintiff's argument, *i.e.*, that Glencore is not required to arbitrate any disputes with Plaintiff. The arbitration provision states in relevant part: "I expressly agree that ***any dispute between Glencore and me*** . . . will be submitted to final and mutually binding arbitration before the American Arbitration Association ("AAA'') as the sole and exclusive forum, and shall not be brought in any state or federal court for ultimate resolution." [Compl. ¶ 201 (emphasis added).] The plain language of the provision mandates that arbitration before the AAA is the "sole and exclusive forum" for ***any dispute*** between the parties—irrespective of which party initiated proceedings. Had Glencore intended otherwise, it would have structured the provision differently (*e.g.*, "I expressly agree that ***I will submit*** any dispute between Glencore and me to final and mutually binding arbitration . . ."). A mutual promise to arbitrate all disputes constitutes sufficient consideration to support an arbitration agreement. *See Deleon v. Dollar Tree Stores, Inc.*, No. 3:16-CV-00767 (CSH), 2017 WL 396535, at *3 (D. Conn. Jan. 30, 2017); *Hellenic Lines, Ltd. v. Louis Dreyfus Corp.*, 372 F.2d 753, 758 (2d Cir.1967) (holding that a party's "promise to arbitrate was sufficient consideration to support [the other party's] promise to arbitrate"); *Topf v. Warnaco, Inc.*, 942 F. Supp. 762, 767 n.2 (D. Conn. 1996) (explaining that "[m]utual promises to arbitrate are

---

relies on, the parties had previously agreed that the employment application was not a binding employment agreement. 282 Cal. Rptr. 96, 99 (Cal. Ct. App. 1991). It is therefore wholly distinct on the facts.

8

sufficient to support an arbitration agreement" (citing *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 411 (2d Cir. 1959))); *see also Manzin v. United Bank & Trust Co.*, 6 Conn. App. 513, 516 (1986) ("[M]utual promises qualify as sufficient consideration for a binding contract." (citing, *inter alia*, *Gordon v. Indusco Mgmt. Corp.*, 164 Conn. 262, 267-68 (1973))); *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 337 (S.D.N.Y. 2014) (employment application requiring both employer and employee to submit to arbitration contained sufficient consideration).

Even if the obligation to arbitrate were not mutual, though, Defendant is correct that under Connecticut law a unilateral obligation to arbitrate is enforceable if supported by adequate consideration. *See Fahim v. Cigna Invs., Inc.*, No. 98-232, 1998 WL 1967944, at *2 (D. Conn. Sept. 10, 1998). In *Fahim*, for example, the court rejected the plaintiff's argument that the arbitration agreement was invalid because the employer "did not commit to arbitrate claims it may have against the employer." *Id.* at *9. The court concluded that "[m]utuality of the arbitration agreement is irrelevant" so long as the employer gives some form of adequate consideration in exchange for the employee's promise to arbitrate. *Id.* Here, Glencore's consideration of her application provides such consideration. Indeed, Murphy expressly acknowledged this in the Employment Application, which specifically stated: "***In consideration for Glencore considering my application for employment***, I expressly agree that any dispute between Glencore and me . . . will be submitted to final and mutually binding arbitration . . . ." [Compl. ¶ 201 (emphasis added).] This provision distinguishes the facts here from those before the court in *Doctor's Associates, Inc. v. Alemayehu*, in which the court's conclusion that an employment application did not provide consideration for an arbitration agreement was based on the fact that "there [was] no language" in the application promising that the employer would

9

"review the application." No. 3:18-cv-276 (JCH), 2018 WL 2947861, at *4 (D. Conn. June 12, 2018). Here, by contrast, the arbitration agreement at issue began by explicitly stating that Glencore's consideration of Ms. Murphy's employment application would constitute "consideration" for her assent to the arbitration provision.

Plaintiff also remains an at-will employee of Glencore despite her indisputable current knowledge of the agreement to arbitrate all claims. Her employment at Glencore during the time that her claims arose provides another source of consideration. *See, e.g.*, *Deleon*, 2017 WL 396535, at *3 (plaintiff's continued employment sufficient consideration for an arbitration agreement); *Comfort v. Mariner Health Care, Inc.*, No. 04-2142, 2005 WL 977062, at *2 (D. Conn. April 26, 2005) ("Where an individual's employment is at-will, continued employment is sufficient consideration to render an arbitration agreement binding." (citation omitted)); *Fahim*, 1998 WL 1967944, at *2 (granting employer's motion to compel arbitration *inter alia* because the employee's continued employment was sufficient consideration for plaintiff's agreement to arbitrate); *Capone v. Elec. Boat Corp.*, 06-1249, 2007 WL1520112, at *6 (D. Conn. May 18, 2007) ("[W]here an individual's employment is at will, continued employment is sufficient consideration to render an arbitration agreement binding"). Plaintiff's claim that the arbitration agreement is unenforceable for lack of consideration thus fails.

    3. <u>Jury Trial Waiver</u>

Murphy next contends that the Employment Application is unenforceable because she did not intend to waive her right to a jury. [Opp. Memo. at 8-10.] Specifically, she argues that she did not intend to waive her right to a jury, but was fraudulently misled into doing so by the Defendant. [*Id.* at 9.] This argument is without merit.

In *L & R Realty v. Connecticut Nat'l Bank*, the Connecticut Supreme Court held that "jury trial waivers in advance of litigation are enforceable where there is clear evidence of an intent to waive." 246 Conn. 1, 16 (1998). The court identified the following factors relevant to whether a party intended to waive its right to a jury trial: "(1) the conspicuousness of the waiver clause, including (a) its location relative to the signature of the parties, (b) whether it was buried in the middle of a lengthy agreement, and (c) whether it was printed in a different typeface or font size than the remainder of the contract; (2) whether there was a substantial disparity in bargaining power between the parties to the agreement; (3) whether the party seeking enforcement was represented by counsel; (4) whether the opposing party had an opportunity to negotiate the terms of the agreement; and (5) whether the opposing party had been fraudulently induced into agreeing specifically to the jury trial waiver." *Id.* at 15.

Connecticut law does not require an explicit jury waiver to create an enforceable arbitration agreement. *See Powers v. United Healthcare*, No. HHDCV000599925S, 2001 WL 291148, at *3 (Conn. Super. Ct. Mar. 2, 2001) (granting employer's motion to compel arbitration and explaining that "[s]ince there was a valid agreement to arbitrate and no allegation of fraud it was not necessary to specifically waive the right to a jury trial in order to make the agreement effective"); *Hessler v. Smith Barney*, No. CV 980583104S, 1999 WL 703077, at *3 (Conn. Super. Ct. Aug. 20, 1999) (rejecting employee's argument that an arbitration agreement requires an explicit jury waiver because "[a]rbitration, as an alternative dispute mechanism, is an alternative to judicial litigation, and therefore excludes trials, both court trials and jury trials"); *see also Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 206 (2d Cir. 1999) (explaining that enforcing a private arbitration agreement does not create the requisite state action necessary to trigger a constitutional claim), *cert. denied*, 531 U.S. 1069 (2001); *Lawrence*

*v. Wilder Richman Sec. Corp.*, 359 F. Supp. 2d 161, 166 (D. Conn. 2005) ("[T]he Second Circuit has squarely rejected the argument that [a] mandatory arbitration clause . . . unconstitutionally requires a plaintiff to forfeit his . . . Seventh Amendment right to a jury trial . . . because there is 'no state action in the application or enforcement of the arbitration clause . . . .'" (quoting *Desiderio*, 191 F.3d at 207)). Plaintiff relies on one Connecticut case, *Norton v. Commercial Credit Corp.*, to support her position that an arbitration agreement must contain an explicit jury waiver. No. CV 980578441S, 1998 WL 729700, at *5 (Conn. Super. Ct. Oct. 6, 1998). The *Norton* decision, however, heavily emphasized the fact that the plaintiff's employer fraudulently induced her into agreeing to arbitrate by telling the employee that "she wasn't agreeing to anything but merely acknowledging receipt of the documents," including the arbitration agreement. Additionally, the Court cannot identify any cases that follow *Norton*. To the contrary, a subsequent case in the Connecticut Superior Court expressly **rejected** the *Norton* holding: "The court does not credit the contention that an arbitration agreement requires a written provision or notice that jury trial is waived." *Hessler*, 1999 WL 703077, at *4. In light of post-*Norton* case law consistently holding the same—that Connecticut law does not require an express jury waiver in an arbitration agreement—the Court finds that Glencore's arbitration agreement did not require an explicit jury waiver, provided that there is evidence of Murphy's intent to waive.

Here, applying the factors set forth in *L & R Realty*, there is ample evidence that Murphy intended to waive her right to a jury trial. An arbitration agreement, by its terms, requires relinquishment of the right to a jury trial; the one at issue here further explicates that, in signing the agreement, Murphy agreed that any dispute between herself and Glencore would "***not be brought in any state or federal court*** for ultimate resolution." [Compl. ¶ 201 (emphasis added).]

The arbitration provision was also highly conspicuous. It was the lengthiest paragraph of a two-page document, not "buried in the middle of a voluminous document," *see Aldin Assocs. LP v. Hess Corp.*, 170 A.3d 682, 690 (Conn. App. 2017). It was also immediately above the signature line, in italicized type face of a standard-sized font. Additionally, there is no evidence that Murphy had been fraudulently induced into agreeing specifically to the jury trial waiver. Unlike in *Norton*, in which the employer misrepresented that the employee was "merely signing an acknowledgement of her receipt of the documents," Murphy cannot claim that Glencore affirmatively misrepresented the nature of what she was signing. Glencore was not required to walk her through the specific contents of a two-page document, and its description of the document as a "job application" cannot be characterized as fraudulent. The absence of an explicit jury waiver, therefore, does not render the agreement to arbitrate invalid.

    4. Procedural Unconscionability

Murphy also argues that the Employment Application is procedurally unconscionable for three reasons: first, because there was no mutual consideration, second, because it constitutes a "take it or leave it" adhesion contract, and third, because she was not given an opportunity to, and did not, read the arbitration provision. Murphy's first argument, that there was no mutual consideration for her entry into the arbitration provision, is meritless. As previously discussed, Glencore provided three different forms of consideration: the mutuality of the agreement to arbitrate, consideration of Murphy's employment application, and Murphy's continued at-will employment at the company. Each constitutes a valid form of consideration.

With respect to Murphy's second argument, the Second Circuit has explained that "[t]he concept of adhesion contracts . . . may not be invoked to trump the clear language of the agreement unless there is a disturbing showing of unfairness, undue oppression, or

13

unconscionability." *Klos v. Polski Linie Lotnicze*, 133 F.3d 164, 168-69 (2d Cir. 1997); *see also Horrocks v. Keepers, Inc.*, No. CV156054684S, 2016 WL 353252, at *8 (Conn. Super. Ct. Jan. 4, 2016) ("An adhesion contract with unequal bargaining power, by itself, is not sufficient to make an arbitration agreement unconscionable."). Consistent with this approach, Connecticut law distinguishes between arbitration agreements imposed by an employer ***after the employee has started work***—which, as a unilateral contract modification may be impermissible, *see Norton*, 1998 WL 729700, at *2 ("continued employment is not sufficient consideration to support a ***modification*** to a contract" (emphasis added))—and arbitration agreements presented as a condition of employment ***before employment commences***, which have consistently been enforced. *See Williamson v. Pub. Stores, Inc.*, No. 3:03-cv-1242 (RNC), 2004 WL 491058, at *1 (D. Conn. Mar. 1, 2004) (enforcing arbitration provision unilaterally imposed by employer at the time of hire); *Pingel v. Gen. Elec. Co.*, No. 3:14-cv-00632 (CSH), 2014 WL 7334588, at *1 (D. Conn. Dec. 19, 2014) (enforcing arbitration agreement that was a "condition of [the plaintiff's] new employment"); *D'Antuono*, 789 F. Supp. 2d at 328 (reaffirming that under Connecticut law, adhesive or "take it or leave it" employment contracts written by relatively sophisticated employers are not *per se* procedurally unconscionable).

Even viewing all of Murphy's claims in the most favorable light, as we must, there was no "disturbing showing of unfairness, undue oppression, or unconscionability" here. *See Klos*, 133 F.3d at 168-69. Rather, this is a standard and unremarkable case of an employer setting forth certain conditions of employment prior to making a hiring decision, and permitting the employee to either accept, reject, or attempt to negotiate those terms. In signing the Employment Application, Murphy opted for the first of those options, and the mere fact that employers typically possess more bargaining power than employees (prospective or otherwise) cannot now

14

allow her to escape that agreement. *See Ragone v. Atl. Video*, 595 F.3d 115, 121 (2d Cir. 2010) ("[E]ven to the extent that the law recognizes that employers and individual employees do not possess equal bargaining power, the FAA certainly does not preclude the enforcement of employment contracts which make employment conditional upon an employee's acceptance of mandatory arbitration." (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991))).

Plaintiff's claim that she did not read the arbitration provision prior to signing is also immaterial here. "In Connecticut, the general rule is that where a person of mature years who can read and write signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it and notice of its contents will be imputed to him if he negligently fails to do so." *Delk v. GO VERTICAL, INC.*, 303 F. Supp. 2d 94, 99 (D. Conn. 2004) (internal quotation marks and citations omitted). Accordingly, courts in the Second Circuit have repeatedly rejected arguments that an arbitration agreement is unenforceable because a plaintiff did not read or review it before signing. *See, e.g.*, *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149-50 (2d Cir. 2004) ("[W]e cannot accept a rule that would allow a party to avoid his legal obligation to read a document carefully before signing it just because the document is an arbitration agreement under which Title VII claims could be arbitrated."); *Pingel*, 2014 WL 7334588, at *9 ("Having signed the Acknowledgement Form, Plaintiff cannot now claim to be innocent of an agreement to arbitrate."); *Williamson*, 2004 WL 491058, at *1 (granting employer's motion to compel arbitration and rejecting employee's argument that the arbitration agreement she signed was procedurally unconscionable because "she was given no opportunity to read [it]" before signing). So too here. Although Plaintiff was given limited time to review and sign the Employment Application, the provision was not buried in a dense contract—it was in a two-page

15

document in reasonable typeface. Moreover, Plaintiff could have requested additional time to review the Employment Application. She did not, and it was not the company's responsibility to ask Plaintiff—a well-educated individual with significant corporate experience—if she wanted additional time or to consult with an attorney. *See Gold*, 365. F.3d at 149-50 (granting motion to compel arbitration where plaintiff was a "fully competent adult (with an MBA from a top-tier school)," noting that the principles of contract law that determine whether a party has agreed to arbitration dictate that "in the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract ... is conclusively presumed to know its contents and to assent to them.").

  5. Fraud

Finally, Murphy asserts that she was fraudulently induced into entering the arbitration agreement. Specifically, Plaintiff contends that Glencore's description of the Employment Application as a "job application" with no further explanation or reference to the arbitration provision was fraudulently misleading. Under Connecticut law, the essential elements of an action in fraud are: "(1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." *Billington v. Billington*, 220 Conn. 212, 217 (1991). A claim of fraud must be proven by clear and satisfactory evidence. *Miller v. Appleby*, 183 Conn. 51, 55 (1981).

Plaintiff's allegations fail to suggest that a false representation was made as a statement of fact, much less that Glencore knew that its representation was untrue at the time. Glencore reasonably used shorthand—*i.e.*, "job application"—to accurately describe the document it provided Murphy to review and sign (which was titled, in bold typeface, "Employment

16

Application"). [*See* Opp. Memo., Ex. A.] The fact that Glencore did not walk Murphy through every provision of a brief, straightforward document falls far short of the standard for fraud.[5]

### C. Arbitrability of Title VII Claims

Murphy further argues that Title VII employment discrimination claims are non arbitrable as a matter of public policy. [Opp. Memo. at 1-3.] She contends that "[g]ender discrimination cases need to be decided in the public forum" [*Id.* at 1] to ensure that companies are held accountable. The confidential nature of private arbitration, she says "only helps to cover up the problem" and does "nothing to deter [an employer] from discriminating in the future." [*Id.* at 1-2.]

Without minimizing the gravity of Plaintiff's arguments—the subject of passionate and contentious debate for decades across this nation's courts and legislatures—we are bound by precedent and cannot accept her position. In *Desiderio*, the Second Circuit squarely held that Title VII claims are subject to arbitration. 191 F.3d at 204-05. As a result, "it is now clearly settled law within the Second Circuit that arbitration clauses can be enforced in Title VII cases." *Martens v. Smith Barney, Inc.*, 238 F. Supp. 2d 596, 601 (S.D.N.Y. 2002*); see also Moorning–Brown v. Bear, Stearns & Co., Inc.*, No. 99 CIV 4130, 1999 WL 1063233, at *4 (S.D.N.Y. Nov. 23, 1999) ("Any doubt in this Circuit concerning the arbitrability of Title VII claims has been eliminated by . . . *Desiderio*."); *Santos v. GE Capital*, 397 F. Supp. 2d 350, 356 (D. Conn. 2005) ("The Second Circuit explicitly has held that Title VII claims may be the subject of compulsory arbitration." (citing *Gold*, 365 F.3d at 148)); *Williamson*, 2004 WL 491058, at *1 (granting

---

[5] Plaintiff's fraudulent inducement argument is further undermined by the fact that Murphy continued to work at Glencore for at least two months after learning about the arbitration agreement. [*See* Polzer Aff. ¶¶ 3-4.] A finding of fraud requires that Plaintiff relied on the fraudulent misrepresentation. *See Billington*, 220 Conn. at 217. Plaintiff's continued employment at Glencore, despite her subsequent knowledge that she would be bound by an arbitration provision, calls into question whether she relied on Glencore's purported misrepresentations in deciding to proceed with the hiring process.

17

defendant's motion to compel arbitration of plaintiff's Title VII claims for sex discrimination and retaliation). *Desiderio* is clear and binding on this Court; thus, what would normally be useful authority cited by Plaintiff—Second Circuit principles governing FAA interpretation, Supreme Court dissents, and legislative history—is immaterial here. Murphy's claims are arbitrable, and the Court is required to compel arbitration.

D.  **Stay or Dismissal of Proceedings**

Finally, having decided that Plaintiff's claims are subject to arbitration, the Court must decide whether to dismiss or stay the proceedings. The answer is clear: in *Katz v. Cello P'ship*, the Second Circuit held that a stay of proceedings is mandatory if the district court requires the party to arbitrate their underlying dispute. 794 F.3d 341, 347 (2d Cir. 2015) ("[W]e conclude that the text, structure, and underlying policy of the FAA *mandate* a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." (emphasis added)); *see also Celltrace Commc'ns Ltd. v. Acacia Research Corp.*, 689 F. App'x 6, 7 (2d Cir. 2017) (district court erred in dismissing rather than staying action after granting motion to compel arbitration (summary order)); *Crawley v. Macy's Retail Holdings, Inc.*, No. 15 CIV. 2228 (KPF), 2017 WL 2297018, at *6 (S.D.N.Y. May 25, 2017) (citing *Katz* to stay rather than dismiss proceedings pending resolution of arbitration).[6] Accordingly, we will stay the proceedings pending resolution of the parties' arbitration.

III.  **Conclusion**

For the foregoing reasons, the Court finds that Plaintiff's claims are properly the subject of arbitration. Defendant's Motion to Compel [Doc. 13] is GRANTED and Plaintiff is instructed

---

[6] Unsurprisingly, every case cited by Defendant in support of entering a stay was decided prior to the Second Circuit's decision in *Katz*. [*See* Doc. 13-1 at 12.]

to pursue her claims through the arbitration process provided by her employer. The case will be stayed pending the outcome of the parties' arbitration.

**It is SO ORDERED.**

Dated: New Haven, Connecticut
       February 11, 2018

                                              */s/ Charles S. Haight, Jr.*
                                              Charles S. Haight, Jr.
                                              Senior United States District Judge